May it please the Court, good morning, Your Honors, Bridget Kennedy, Federal Defenders of San Diego, and I'm appearing for Mr. Guevara. I'd like to focus my argument on two issues. First, Abebe's effect on 212C, and second, the plausibility of Mr. Guevara being granted 212C at his deportation hearing. I'm also going to reserve a couple minutes for rebuttal. Your Honors, Abebe clearly only eliminated the due process requirement that 212C be extended to deportable aliens that have matching grounds of inadmissibility. It did not eliminate that form of relief. It explicitly said that the regulations which provide for that form of relief remain intact. It said nothing we say today casts any doubt on the regulation. Since Abebe, this Court, in an unpublished decision from this summer, Magana-Consino, and the BIA and the DHS have affirmed that. They've all said that Abebe did not affect the regulations and that 212C remains available for aliens in deportation proceedings with matching grounds of inadmissibility. Specifically in Magana-Consino, the Court said Abebe is an opposite. Why don't, okay, I think we can decide whether, what Abebe, what it did. It would probably be a good idea for you to address the prejudice. Certainly, Your Honor. Your Honor, the District Court erred in holding that the IJ would have and should have applied the heightened standard. The heightened standard applies primarily to cases where Petitioners have a prior drug offense, either any kind of drug felony or any kind of drug trafficking offense. The heightened standard can apply in cases where the Petitioner does not have a drug offense, but only in very limited and very extreme circumstances. When we look at the cases where, cases cited by the government, the vast majority of the people in those cases had prior drug offenses. Buscemi, Bourbono, Ayala-Chavez, Yepes-Prados, Hernandez-Galaviz, Hernan-Edwards, and Maschia. Every single one of those, the Petitioner had a prior drug offense, and therefore, the heightened standard automatically applied. Regardless of how serious the offense was, and that's because Congress treats drug offenses very differently in this context. He had two burglary convictions, did he not? Well, my client had two second degree 459 convictions. I think it's questionable whether it's technically burglary, but California calls it burglary. They're second degree, which means even if they're burglary offenses, they don't relate to a home. They relate to a store or a car or something else other than a home. However, in this case, he had just generic second degree 459 convictions, which are not categorically burglary offenses. But he pled to all the elements. In 1982, he did. He did not plead to all the elements. Well, he pled to the generic statute in 1992 and possibly in the first one as well. The generic statute clearly is not a burglary offense as the Ninth Circuit and as the federal court defines that. If the court's referring to it being an aggravated felony, the case law is clear that second degree burglary, or excuse me, second degree 459 in California is not categorically an aggravated felony. And that's important that he didn't have an aggravated felony at the time of his deportation, because when we look at the only cases that have used the heightened standard where there's not a drug offense, it's where the petitioner had not only an aggravated felony but a violent aggravated felony. Mr. Guevara had no aggravated felonies. He had no crimes of violence. In 1992, he was charged with entering a locked vehicle with intent to commit larceny. The guilty plea and the judgment, he pled guilty to those. You're saying that that does not bring it under the modified categorical approach, an aggravated felony? No, it does not. But I don't think that's properly what he pled to. I believe he pled to commit larceny or any felony, which is the generic language of 459, of second degree 459. Okay. Which makes it not an aggravated felony. However, even if the court were to find that the heightened standard applies, clearly Mr. Guevara still had a plausible ground for relief. Mr. Guevara had lived in the United States as a legal permanent resident for 26 years. He moved here at 14 years old. He moved here with his mother, his stepfather, six siblings, including one full sibling and five half siblings, I believe. He began working as soon as he moved here with his parents at the factory where they worked. As soon as he began working, he began contributing to the family home, although technically he didn't have property in his name. He had contributed to his family's property. His mother described that he helped with his younger siblings. He was the oldest sibling. He helped with his nieces and nephews when they came along. And, you know, his parents had an expectation that as their only unmarried child, that he would continue to care for them as they grew older. Additionally, he had evidence of rehabilitation, or would have had evidence of rehabilitation in 1987 had he been permitted to apply for 212C relief. Looking at the case law, the amount of time that he lived in the United States alone is an unusual and outstanding equity that would have at least plausibly warranted the granting of 212C relief, even with the heightened standard applying. And I can cite the court to three of the government's cases, Henry Catalina de Rodriguez, Matter of Buscemi, and Edwards. In each of those, the petitioner had less time in the United States than Mr. Guevara had, 20 years, 17 years, and 22 years. And in each of those cases, the amount of time that those petitioners were in the United States as an LPR was an unusual and outstanding equity. And that would have been an unusual and outstanding equity in this case as well. The government's argument is essentially, what they attempt to argue, is that Mr. Guevara would need to show that it was likely that the immigration judge would have given him 212C relief. That's absolutely not the right standard. The Ninth Circuit has squarely rejected that and held that the standard is whether it's plausible that an immigration judge would have granted this relief. Here, the government's argument may be correct that he did not have an incredibly strong chance of getting 212C relief, but he certainly had a plausible chance. And the standard here is not whether he had an incredibly strong, even a strong, likelihood for relief. As Zolotukhin explained, even a petitioner with a weak case has a right to a fair hearing. So clearly, Mr. Guevara has shown that he could have had plausible ground for relief, particularly where over half of the petitioners who applied for 212C relief, many of whom had much more serious convictions than Mr. Guevara and much fewer equities than Mr. Guevara, were being granted 212C relief. I'll save the last three minutes for rebuttal, if that's all right. Okay. Thank you. Good morning, Your Honors. May it please the Court, Joseph Orobono on behalf of the appellee of the United States. Let's assume for argument's sake that there's prejudice in this case. Let's take it to the last end of the analysis, and let's look at the prejudice analysis. So let's assume there's a due process violation and that we have to now look at whether or not the appellant in this case suffered any prejudice. It is unequivocal that the outstanding and unusual standard applies in this case. And counsel just cited several cases that the government relied upon to show that that standard applies. If you look at the BIA's opinions in the matter of Marin and the matter of Edward, it lays out three situations in which that heightened standard applies. The first, which counsel for the appellant quickly laid out, a drug offense. The second is whether or not the defendant has a very serious crime, such as an aggravated felony. And the third is a pattern of criminal activity. And that, Your Honors, is what Mr. Guevara assumed this case fits right in. He has a pattern of criminal activity that is serious and egregious. For example, in Ayala Chavez, yes, the defendant had a possessionary drug charge, but he also had several traffic offenses. And when the Ninth Circuit looked at that case, they looked at it under the pattern. They said, look at the pattern of criminal activity that this defendant had. He has to meet the heightened standard. The Ninth Circuit did that again in Gonzalez Valerio, where that defendant had a pattern of criminal activity. He had a lewd, lascivious, aggravated felony conviction, and he had two domestic violence convictions. But they analyzed it looking at the pattern of criminal activity. There's an unpublished decision that the government cited, Mr. Hernandez-Galavez, which was unpublished in 2007. In that case, the defendant had two felonies, four misdemeanors, and six citations. And the court in that case, the Ninth Circuit held, that the unusual and outstanding equities apply. And in the Eighth Circuit case, Machio, yes, he did have a sexual misconduct conviction. But the Eighth Circuit in that case also looked at his pattern of criminal activity. He had seven convictions involving three DUIs, traffic offenses, theft, and burglary. Much like the appellant in this case. Mr. Guevara Suna entered the United States in 1971. Merely four years later, he's involved in criminal activity. There is a pattern of criminal activity 17 times he has law enforcement contacts over the period of that 26-year residency in the United States. He has eight criminal convictions during that period. And he starts off with several misdemeanors. He has five misdemeanor convictions. If you look in the 1978 arrests and convictions, he's getting arrested and convicted of crimes such as receiving stolen property and drunk driving, reckless driving. And then in 1991, Mr. Guevara Suna graduates. He's convicted of his first felony. It's second-degree burglary. And I agree with Judge Fischer that if you look at the documents that the government submitted that support that felony, you'll see that there's the complaint and the language of the complaint that he unlawfully and willfully entered a locked vehicle with the intent to commit a larceny and any felony. That if you look at the judgment that he got 16 months on that probation revocation. And also there's a minute order. And let me give the court the sight to that minute order. Because the minute order is important. Because as this court noted in Vidal, that the judge in this case, pursuant to, I'm sorry, it was a certificate in order of the magistrate. And that's at ER 136. There what the judge did was it says in that certificate that he read the complaint to Mr. Guevara Suna and Mr. Guevara Suna pled guilty to the complaint. So he admitted the facts that are in that complaint by pleading guilty to those facts in front of that judge. I would disagree with that because it said larceny or any felony. That that takes it out of the modified categorical and leaves it or does not remove it from categorical. Is that correct? I would disagree with that because if you look at the language, it says larceny and any felony. So it's a conjunctive. And that's typical of how the government charges those types of cases. So the fact that he is charged with larceny and any felony and that he pleads guilty to committing larceny and any felony, that under the modified categorical approach, this court could find that those are aggravated felonies. But we still don't need to get there because he cannot meet the outstanding and unusual equity standard. Look at, we'll take the factor-by-factor analysis that I laid out in my briefs and I'll summarize it for the court. Looking at his length of residency in the United States, I disagree that length alone is sufficient to meet that standard. That length is littered with convictions and law enforcement contacts over that 26-year period including his first contact nearly four years after he's admitted. There are probation violations in there as well and there are cases that the government cited in its brief that say that when you have criminal convictions spanning over that same period of length, that length is watered down and it won't rise to the level of unusual or outstanding equities. Looking at the declarations that the defendant submitted in order to meet his burden of proof, he submitted two declarations, one from his mother and one from his aunt. The problem with those declarations is what the government presented to the court at the district court level was a probation report. And what I'd like to point this court to is if you go to page 59 of the ER, 59, I believe 161, I'm sorry, 159, 161, 162, you'll note at the top that when we're talking, when the probation officer is talking about his substance abuse or his undocumented work history and his relationship or lack of relationship with his stepfather, that the source of information in that probation report is the defendant himself. And that is more powerful and way stronger than declarations submitted by his mother and his aunt at the time of the motion hearing. Because here's the defendant himself in 1993 sitting in front of the probation officer facing his third felony conviction and it's his job to sit there and try to mitigate those circumstances. And he doesn't do that. He tells the probation officer he doesn't have a good relationship with his father. And in fact, his work history, it's only stable for five years. And it's unverified by the probation officer. And his substance abuse spanned over the period of his residency in the United States. When you take all of that, the hardship to his family, for example, it's not unusual and outstanding. It's the same type of hardship that's suffered by most aliens requesting a 212C relief. It's not unusual or outstanding. Yes, I'm sure that they did suffer. And his mother did note that he was contributing to the mortgage. But when you look at ER 162, it indicates that he merely had five years of stable residence and that he was at this time at least receiving state aid and food stamps. And it's also worthy to note that he doesn't list under his liabilities to the probation officer that he's helping his mom with the mortgage or that he's contributing to any of that. He doesn't list any assets, and he doesn't list any liabilities. So there's no supporting documentation for the evidence that the defendant submitted in support of his claim that he can show prejudice in this case. And therefore, since the defendant cannot meet the heightened standard, which clearly applies, this case is analogous to those cases that are cited in the Ninth Circuit and the Eighth Circuit. And the defendant cannot meet prejudice, unless the court has any further questions. I would submit on that. Thank you. First, to address the pattern of serious criminal activity that would warrant the heightened standard. Certainly a pattern of serious criminal activity is something that would warrant the heightened standard. The question is, did Mr. Guevara's criminal history rise to that level? When we look at all the cases cited by the government, none of those cases involved somebody who did not have an aggravated felony or did not have a crime of violence and did not have a prior drug offense. Mr. Guevara has none of those. But if that's true, then it simply collapses the three categories into two, doesn't it? Not necessarily. I think there could be aggravated felonies that are not, I think the language is particularly serious offense or whatever the second standard is. But in these cases, I mean, when you look at the pattern, every single one of them included as part of the pattern, either a drug offense or an aggravated felony crime of violence. I think just aggravated felonies or just crimes of violence could contribute, could be serious under a pattern of serious criminal history. But a pattern of serious criminal history is not misdemeanors, mostly misdemeanors, and then three felonies, none of which were aggravated felonies and none of which were crimes of violence. The word serious has to be given real meaning, and the way the Ninth Circuit has given it real meaning, at least in the cases cited by the government and in the experiences of this court, has been through looking at drug offenses, aggravated felonies, crimes of violence. As to the government's discussion of Mr. Guevara's arrests that did not lead to convictions, I think the courts would give very little weight to those arrests because they did not lead to convictions. The BIA has explained that they give very little weight to arrests without convictions in Enrique Catalina de Rodriguez, at least not without supporting and substantiating evidence of those arrests. As to Mr. Guevara's showing of outstanding and unusual circumstances or a showing that 212C was simply warranted under the standards under Marin, Mr. Guevara's family did suffer extreme hardship. If we look to the Ninth Circuit case of Arrieta, it explains that family separation is, in and of itself, an extreme hardship for the purposes of 212H relief, which granted is a different standard but very similar. Arrieta explained that relocation of a family is not an extreme hardship, but family separation is an extreme hardship. Here Mr. Guevara was leaving virtually his entire family, his mother and stepfather who had raised him, and all of his siblings, who are all either United States citizens or legal permanent residents of the United States. So clearly that hardship rose to the level of extreme and unusual hardship. Are you saying it's the hardship on them or the hardship on him? Well, I think both are considered. I think the court probably would consider the hardship on them more than the hardship on him, but I think both would be considered. As to the probation report and his reporting in the probation report, Your Honor, he did indicate at that time that he had been sober for two years, at least sober from alcohol, which is what he had the major problem with and probably led to the majority of his criminal convictions. And as to the government discounting his period of time he was living in the United States as an LPR, he had first a series of misdemeanors as an adolescent, and then he had 13 years with no convictions. The court can look at those 13 years alone if the court feels that it can't look to the rest of the time that he lived in the United States. Clearly, just his time alone in the United States was unusual and outstanding equity. I think I'm out of time. Sorry. Thank you. Thank you. Thank you, counsel. We do appreciate the argument. Case is submitted.
judges: Strom, Fisher, Bybee